Decree affirmed and appeal dismissed, at the costs of the appellants.

---

# Appeal of W. W. Hopkins, Trustee, Amos S. Henderson's Estate.

Where there is a failure to trace trust funds into any specific property

NOTE.—Similar determinations are found in Lebanon Trust & S. D. Bank's Estate, 166 Pa. 622, 31 Atl. 334, and Freiberg v. Stoddard, 161 Pa.

of the trustee, they are not entitled to priority of payment over the claims of other creditors, although the trustee may have continued to pay interest on the securities in the form in which they originally came into his hands.

(Argued May 19, 1887. Decided May 30, 1887.)

January Term, 1887, No. 398, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from the Orphans' Court of Lancaster County dismissing exceptions to the report of an auditor distributing the estate of a decedent and disallowing the claim of the appellant as a preferred claim. Affirmed.

The auditor reported as follows, upon the contention of this appeal:

W. W. Hopkins, trustee under the will of Dorothea Brien, deceased, presented a preferred claim of $13,267.50, with interest from February 6, 1886. Dorothea Brien died testate on August 21, 1862. August 28, 1862, her last will and codicil thereto were duly proved before the register of Lancaster county, and letters testamentary granted to Amos S. Henderson, who was appointed executor in said codicil. September 11, 1862, Mr. Henderson, as executor, filed in the register's office an inventory and appraisement of the goods and chattels, rights and credits, which were of Dorothea Brien, at the time of her decease, amounting altogether to $16,033.16. Mr. Henderson never filed an account in this estate.

John D. Skiles, administrator of Amos S. Henderson, deceased, who was executor of the last will and testament of Dorothea Brien, deceased, filed an account April 24, 1885,

259, 28 Atl. 1111. So, in Cross's Appeal, 97 Pa. 471, it was held that no resulting trust in land would arise from the mere fact that the owner of the land uses trust funds in its improvement.

In Cross's Appeal, 97 Pa. 471, 1 Chester Co. Rep. 221, the auditor found as a fact that the guardian used his ward's money in improving his land and in building a house, etc., and that the guardian thought such use of the trust money was safer than investing it in stocks. The supreme court held, Sharswood, J., dissenting, that the proceeds of the sale of such real estate by the assignee for the benefit of creditors of the trustee were not impressed with a resulting trust for the trust moneys so used.

A resulting trust in lands, in Pennsylvania, must arise, if at all, at the inception of the title. Barnet v. Dougherty, 32 Pa. 371.

It was held, also, in Cross's Appeal, that the cestui que trust had no lien on the land, arising from the equitable circumstances of the case.

showing a balance, due the estate of Dorothea Brien, in the account of $13,843.

Exceptions to this account were filed by D. G. Eshleman and S. H. Reynolds, attorneys for the trustee of Dorothea Brien, deceased. The court appointed Simon P. Eby, Esq., auditor, to pass on said exceptions, whose report was duly confirmed nisi by the court on February 6, 1886, fixing the balance due from the estate of Amos S. Henderson to the estate of Dorothea Brien, deceased, of $13,267.50. This balance does not include two notes of $1,500 which were earmarked and found among the effects of the estate of Mr. Henderson by his administrator, John D. Skiles, and by him previously handed to W. W. Hopkins, the new trustee of the Brien estate.

No money or other security than these two notes was found anywhere that could be identified as belonging to the estate of Dorothea Brien, deceased, since the death of Amos S. Henderson.

These two notes of $1,500 are not embraced in the inventory or account of Mr. Skiles, as administrator of Amos S. Henderson, deceased.

A paper in the handwriting of Mr. Henderson was offered in evidence by W. W. Hopkins, trustee, of which the following is a copy:

Securities held by A. S. Henderson, Exr., for the estate of Mrs. Brien, April 1, 1876.

| | |
|---|---:|
| U. S. bonds | 4,000 |
| Reinoehl judgment | 4,000 |
| Camden & Amboy bonds | 2,000 |
| Atlee notes | 1,000 |
| Wiley judgment | 500 |
| Ferguson judgment | 500 |
| | $13,000 |

Twenty-seven shares Pennsylvania railroad, worth over $1,500.

At the time of Mr. Henderson's death none of these securities, nor those mentioned in the inventory and appraisement, were found among his effects; nor could the proceeds thereof be traced or identified.

The will of Dorothea Brien directs the payment of her "just debts, funeral and other expenses," then gives, devises, and bequeaths "the rents, incomes, and interest of the net residue and remainder of her estate, real, personal, and mixed, whatsoever and wheresoever, to her daughter, Sarah B. Rogers, for her sole and separate use during her natural life."

At the decease of her daughter she gives and bequeaths the "said residue and remainder" to all the children of her said daughter then living and "to the child or children of any of them dead, their heirs and assigns, *per stirpes,* in equal shares and parts."

Mrs. Rogers, as appears from two bank books offered in evidence, kept her bank account with Reed & Henderson since October 30, 1874, until Mr. Reed died, and then continued her bank account with Mr. Henderson.

Her bank book with Mr. Henderson shows, in the handwriting of Mr. Henderson, the following entries:

1882, Dec. 6, Camden & Amboy ................... $60.00
1882, Dec. 6, P. R. dividend...................... 33.75
1882, Dec. 6, R. scrip........................... 31.86
1883, June 14, Penna. dividend................... 27.00
1883, June 14, C. & A. coupon................... 60.00

A large number of other debits and credits appear in these bank books. The last entry in Mrs. Rogers's bank book is,
1885, Feb. 7, to balance...................... $300.88

In these bank books it appears that Mrs. Rogers deposited her other money besides the income she received from her mother's estate through Mr. Henderson, who was the executor.

These bank books and the paper dated April 1, 1876, in Mr. Henderson's handwriting, of which a copy is given, were before the auditor, Simon P. Eby, Esq., who passed on the exceptions. But the counsel did not have this paper dated April 1, 1876, when they stated the account of John D. Skiles in the Dorothea Brien estate.

There were not found among the effects of Mr. Henderson's estate any Camden & Amboy coupon or registered bonds; any certificates of P. R. R. stock; any bonds or stock of the P. R. R. Company; any bonds or stock of the Camden & Amboy Railroad Company, in the name of Dorothea

Brien, or in the name of A. S. Henderson as executor of the estate of Dorothea Brien, or in the name of A. S. Henderson as executor or trustee, nor any of the proceeds of any such bonds or stock in the account of Mr. Skiles as administrator of Mr. Henderson.

The auditor finds as a fact that the trust money of $13,-267.50, the proceeds of converted securities, has passed into currency without a trace of identification.

The claim of $13,267.50, presented as preferred, by Mr. Hopkins, trustee under the will of Dorothea Brien, deceased, is only allowed a dividend with the general creditors.

Mr. Henderson, executor of the will of Mrs. Brien, came into possession of certain trust funds and securities of her estate. At the time of his death two notes, amounting to $1,500, which were earmarked, were the only property among his effects which could be identified as belonging to the trust. These two notes were handed over to Mr. Hopkins, who became Mr. Henderson's successor in the trust.

There is no trace which leads to an identification of the balance of the trust estate, and the inference is that Mr. Henderson has tortiously converted the trust securities and appropriated the proceeds to his own use.

It does not appear definitely when he appropriated the proceeds to his own use; it does not appear definitely when he appropriated this $13,267.50. The bank books contain no entries on the subject. It does not appear that he put the money into his bank, although he may have. Whatever particular disposition he may have made of this trust money, there can be no doubt that it has passed into currency and by its circulation became engulfed in the commercial interests of the community. The legal principles which govern this claim are recognized in Thompson's Appeal, 22 Pa. 16.

Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the *cestui que trust,* which attach to it until detached by the superior equity of a bona fide purchaser for a valuable consideration without notice. But the right of pursuing it fails when the means of ascertainment fail. This is always the case when the subject-matter is turned into money and mixed and confounded in a

general mass of property of the same description. Story, Eq. §§ 1257–1259.

"An earmark is not indispensable to enable a real owner to assert his right to property or to its product or substitute. Evidence of substantial identity may be attached to the thing itself or it may be extraneous. It is freely admitted that if a trustee or agent receive money of a *cestui que trust* or principal, and mingle it with his own so that it cannot be followed, the *cestui que trust* cannot recover it specifically. This is not because the ownership is changed, but because a court cannot lay hold of the property as that of the owner." Farmers' & M. Nat. Bank v. King, 57 Pa. 208, 98 Am. Dec. 215.

Lord MANSFIELD said: "It has been quaintly said 'that the reason why money cannot be followed is because it has no earmark.' But this is not true. The true reason is, upon account of the currency of it, it cannot be recovered after it has passed in currency. So, in case of money stolen, the true owner cannot recover it after it has been paid away fairly and honestly upon a valuable and bona fide consideration; but before money has passed into currency an action may be brought for the money itself. . . . Apply this to case of a bank note; an action may lie against the finder, 'tis true, . . . but not after it has been paid away in currency." [Miller v. Race, 1 Burr. 457.]

Lord ELLENBOROUGH observes: "The product of or substitute for the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such. And the right only ceases when the means of ascertainment fail, which is the case when the subject is turned into money, and mixed and confounded in a general mass of the same description." [Taylor v. Plumer, 3 Maule & S. 575.]

The *cestui que trust* in the Brien estate is in no worse position than any other of the general creditors; and she is entitled to her dividend, which is awarded in this distribution upon the legal principles above stated.

Exceptions were filed by W. W. Hopkins, executor, that his claim was not allowed in full, which were dismissed by the court; and the report was confirmed absolutely.

The assignments of error specified: (1) The dismissal of the exceptions; and (2) the confirmance of the report.

*D. G. Eshleman* and *S. H. Reynolds,* for appellant.—In Hallett's Estate, L. R. 13 Ch. Div. 696, a fund, originally a trust fund, was followed into certain bonds, in which it had been invested by Hallett, and the proceeds of other securities which he held as agent were followed into his bank account; both funds were recovered by their beneficial owner.

"We may here put the case of trust money mixed in the same heap with the trustee's money. It may be said that the trust money has, like water, run into the general mass and become amalgamated, and therefore the *cestui que trust* has no lien. But clearly this cannot be maintained; for suppose a trustee, partly with his own money and partly out of the trust fund, to have purchased an estate. It cannot be predicated of any particular part of the estate that it was purchased with the *cestui que trust's* money, and yet the *cestui que trust* has a lien upon the whole for the amount that was misemployed. And it follows in the other case that though the identical pieces of coin cannot be ascertained, yet, as there is so much belonging to the trust in the general heap, the *cestui que trust* is entitled to take so much out." Lewin, Tr. *759; Pennell v. Deffell, 4 De G. M. & G. 372; Farmers' & M. Nat. Bank v. King, 57 Pa. 202, 98 Am. Dec. 215.

In Frith v. Cartland, 2 Hem. & M. 417, a person received from plaintiff certain acceptances for a special purpose. He got them cashed and ran away. After mingling the money with his own and making various changes and transformations, he was arrested, and it was held that the plaintiff was entitled to the money in preference to creditors.

In People v. City Bank, 96 N. Y. 32, the bank received from a depositor checks for the payment of two notes formerly discounted by them, and then charged said checks to his general account and soon thereafter failed. The bank in fact did not have the notes, but had sold them to a third party and recovered the proceeds before the checks above named were drawn, and of these facts the depositor was ignorant. The receiver of the bank was ordered, on application of the depositor, to pay him the full amount of the notes out of the general assets of the bank in his hands, on the ground that the bank was a trustee in the matter of the checks, and the proceeds of the notes belonged in equity to the depositors, and though specific identification was impossible, the general assets in the hands of the

receiver were *pro tanto* impressed with a trust in favor of the depositor.

In Peak v. Ellicott, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499, money had been paid to a bank for the particular purpose of paying a note, supposed to have been held by it, but which was in fact held by another bank. The bank which had received the money failed to pay the note and then became insolvent; and the general fund in the hands of the assignee of the bank was held to be impressed with a trust *pro tanto*.

In McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214, McLeod deposited with H, a banker, for collection a draft on New York, which H was to send there for collection. He in fact sent it to a Chicago bank which gave him credit therefor, and H drew against it until it was exhausted, and afterwards suspended business. His assignee received only a small amount of money, but collected other assets and converted them into money, and McLeod sued him for the full amount of the draft. It was held that H having used the proceeds of the draft, either to pay off his debts or to increase his assets, they were somewhere in the assets conveyed to the assignee, so that they were traced into the estate in his hands, which was *pro tanto* impressed with the trust.

The auditor overlooked the fact that modern equity follows trust funds further than did such chancellors as Lords MANSFIELD and ELLENBOROUGH, who seem to have been followed by LEWIS, J., in Thompson's Appeal, 22 Pa. 16. He quotes STRONG, J., in Farmers' & M. Nat. Bank v. King, 57 Pa. 202, 208, 98 Am. Dec. 215, in support of his views; but he has, unwittingly, no doubt, done that distinguished judge the injustice of not reading his whole opinion.

Hallett's Estate, L. R. 13 Ch. Div. 696, criticises the language of Lord ELLENBOROUGH in Taylor v. Plumer, 3 Maule & S. 562, which was adopted in Thompson's Appeal.

*H. M. North* and *W. R. Wilson,* for appellee.—The fund for distribution, from whatsoever source derived, constitutes part of the decedent's estate. McClintock's Appeal, 29 Pa. 360; Abbott v. Reeves, 49 Pa. 494, 88 Am. Dec. 510; McCandless's Estate, 61 Pa. 9–11.

The finding of the auditor, being affirmed by the court below,

will not be disturbed unless for manifest error. Roddy's Appeal, 99 Pa. 10.

What is the law arising on the facts found? This is not answered by any inquiry into the law of England or of other states of the Union. But the question is: What is the law of Pennsylvania?

Appellant's counsel concede that Thompson's Appeal, 22 Pa. 16, is on all fours with the case in hand and is against their position; but seem to argue that since the time it was decided, 1853, the principles of equity controlling this case have undergone a change. That the auditor and court below in their decision are well fortified, even by the textwriters, abundantly appears by reference to Story's Equity, §§ 1257–1259; Perry, Trs., § 128; Hill, Trustees, *531, top pages 828, 829.

Thompson's Appeal, instead of being weakened, seems to have been strengthened by time. Peoples' Bank's Appeal, 93 Pa. 107, 39 Am. Rep. 728; Williams's Appeal, 101 Pa. 481.

Where an administrator mixes the trust funds with his own and fails, the creditors of the estate have no preference over the individual creditors. Cunningham's Estate, 2 Am. L. Reg. 120.

If this Brien trust money was, at the time of decedent's death, so distinct from the mass of his other property as to be identified, then it is not now and never was a part of decedent's estate, and should not have been included in inventory and account; but the account as it was confirmed by the orphan's court stamps every dollar of the balance as the estate of decedent, and as such it must be distributed; and the act of assembly regulates the order by which it is to be done. Act of February 24, 1834; Wylie's Appeal, 92 Pa. 196; Jefferis's Appeal, 33 Pa. 39.

PER CURIAM:

This decree is clearly right. The attempt to compel the payment of the claim of the appellant in full, to the prejudice of the other creditors, is unwarranted under the evidence. There is an entire failure to trace the money of the testatrix into any specific property left by Mr. Henderson.

Decree affirmed and appeal dismissed, at the costs of the appellant.