SARAH M. PEARSON, by her Guardian, Respondent v. HENRY L. HAYDEL, Adm'r of Francis Haydel, deceased, Appellant.

**St. Louis Court of Appeals, November 19, 1901.**

1. **Equity: TRUST PROPERTY: ASSETS TRANSFERRED TO ASSIGNEE OR TRUSTEE: LIEN ON TRUST PROPERTY IN FAVOR OF CESTUI QUE TRUST: WHEN IT WILL BE MAINTAINED: CREDITORS.** The rule in equity is, that if trust property has been mingled by the trustee with his own property, so that one can not be distinguished from the other, and he transfers his property to a trustee or assignee for the benefit of his creditors, a court of equity, as between the *cestui que trust* and the personal creditors of the trustee, will follow the trust property or its proceeds, *and if the same can be traced into the property or assets transferred to the trustee or assignee*, will impress upon such property or assets a lien in favor of the *cestui que trust* to the extent that the property or assets transferred have been swelled by the trust property or its proceeds.

2. ———: ———: ———: ———. The rule enunciated in equity requires the trust fund or its proceeds to be still mixed with the

mass of the insolvent's estate in the hands of his assignee, trustee or other representative, in order for a preferential lien to be declared, and holds that the fact that it was at one time wrongfully mingled with it, is insufficient to authorize a preference.

3. ———: ———: ———: EVIDENCE. In the case at bar, the evidence fails to show that the assets which went into the hands of the administrator were enriched or swelled by the trust fund.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

REVERSED AND REMANDED *(with directions).*

STATEMENT OF THE CASE.

The respondent was heretofore adjudged of unsound mind and sues by her duly appointed guardian, the Mississippi Valley Trust Company. Francis L. Haydel, deceased, was given a power of attorney by her on the eighth day of February, 1896, to collect her loans and interest, dividends on stocks and other money, and lend and reinvest it for her. On that date Haydel had in his hands belonging to the respondent, two thousand one hundred and seventy-four dollars and seventy-eight cents. He conducted various transactions for her from the date of the power of attorney until March 6, 1898, when he died. In the course of these affairs, he received sums of money belonging to her, amounting in the aggregate to five thousand, four hundred and sixty-five and fifty-four one-hundredths dollars, which, added to the sum in his hands when he began to act as attorney in fact, made a total of seven thousand, six hundred and forty and thirty-two one-hundredths dollars collected by him in said capacity. At the time of his death he was entitled to credits on account of legitimate disbursements, commission, and a fund in bank to the credit of Sarah M. Pearson, in the sum of four thousand, nine hundred and fifty-seven and ten one-hundredths

dollars, leaving a balance of two thousand two hundred and forty-eight and twenty-two one-hundredths dollars to be accounted for. The defendant, Henry L. Haydel, is the administrator of the estate of Francis L. Haydel, deceased. The inventory of the estate showed an aggregate of eight thousand one hundred and forty-one and ninety-four one-hundredths dollars of personal property, consisting chiefly of stocks, notes and accounts. A supplemental inventory was filed later, showing three thousand, six hundred and twenty-two and forty one-hundredths dollars received by the administrator as the proceeds of a life insurance policy. The deceased also left twenty-three parcels of real estate, situate in the city of St. Louis, all of them incumbered by deeds of trust and not of sufficient value to pay the incumbrances. It was admitted at the trial that the assets of the decedent are insufficient to discharge the liabilities which were allowed or presented during the first year of administration, to pay fifth-class demands.

Francis L. Haydel was in partnership with his son, Henry L. Haydel. The funds belonging to Sarah Pearson, which came into his hands, were commingled with the funds of the firm of Haydel & Son, carried in their bank account and checked against for the firm's disbursements. The deposits and checks each amounted to about thirty-five thousand dollars a month. There was a balance to their credit of one thousand and sixty-six and twenty one-hundredths dollars, when Francis Haydel died, two-thirds of which, or seven hundred and ten and thirty one-hundredths dollars belonged to him. It appears that a small portion of the money belonging to Sarah Pearson was kept in a separate account in the State Bank, and there was in that bank to her credit, when Haydel died, the sum of four hundred and thirty-five dollars, with which the latter's estate has been credited in this suit. We have carefully checked over the bank account of Haydel & Son, during the time of the agency. Throughout the two

years, the firm frequently overdrew, and at different times was several hundred dollars in debt to the bank. It is clear that none of the Pearson funds can be traced with any certainty into the balance standing to the firm's credit at the death of Francis Haydel. Neither is there any evidence to prove they are contained in the corpus of the decedent's estate, further than the inference which may be drawn from their having been used in the business. It was admitted at the trial that the plaintiff's funds were checked out indiscriminately on account of the business of Haydel & Son.

The object of this suit is to have a lien declared on the entire assets in the hands of Francis Haydel's administrator in favor of the plaintiff, on the ground that the funds received by the deceased, as her attorney in fact, were trust moneys and that therefore she is entitled to be paid preferentially before other creditors. A decree to that effect was rendered by the trial court, from which the defendant prosecutes this appeal.

*E. T. Farish* for appellant.

(1)   The only ground that the plaintiff can invoke to establish her demand as a lien and a preferential claim over all other creditors of Francis L. Haydel, deceased, must be upon the ground that the Pearson moneys had gone into and swelled the assets of the estate of said Francis L. Haydel. The rule that formerly obtained in equity was that equity would follow the trust fund as long as it could be distinguished, i. e., that there were earmarks about it by which it could be identified from other funds—and though the more advanced doctrine is that such preference or lien may be established as long as the facts show that there was evidence authorizing the inference that the trust money had gone into and swelled the existing assets (in this case) of the deceased.

The evident idea and the ground upon which this advanced doctrine is predicated must be, that because of the swollen volume of the assets on hand at the time of the decease, it may reasonably be presumed that the trust funds in question went into and occasioned the swelling of said assets. (2) The idea of the law is that because there are no earmarks to money or other property, yet if the facts show that the assets on hand were so increased in volume that it may reasonably be presumed that that identical money was then on hand and formed a part of said assets, that then the law will lay its hands upon it by enforcing a preferential lien therefor. Upon no other theory or hypothesis can this suit be maintained. But here not only does the petition fail to make such an averment, but the admitted facts show that such was not the case.

*Daniel Dillon* for respondent.

That the moneys collected by Francis L. Haydel, as special agent and attorney in fact of Miss Pearson, was a trust fund is not denied. Under the law of this State, as declared by our appellate courts, she was clearly entitled to a preferential lien against the assets of Francis L. Haydel in the hands of his administrator, entitling her to be paid in preference to general creditors. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; Ev. S. N. A. v. Schoeneich, 143 Mo. 652; Pundman v. Schoeneich, 144 Mo. 149; Tiernan's Ex. v. Sec. B. & L. Ass'n, 152 Mo. 135; Bank v. Sandford, 62 Mo. App. 394; Brick Co. v. Schoeneich, 65 Mo. App. 283; Leonard v. Latimer, 67 Mo. App. 148-9; Bircher v. Sheet Metal Co., 77 Mo. App. 569.

GOODE, J.—The proof before us shows that the sums collected by the decedent, as attorney in fact for Sarah M.

Vol 90 app—17

Pearson and mingled with the funds of Haydel & Son, were paid out by that firm in the usual course of business. There are, too, the proceeds of the insurance policy which the administrator collected after his intestate's death. We know none of the trust money is in that asset. Is the respondent entitled to a lien on any of the estate's property? If so, should it extend over the insurance money? The old doctrine that the trust property must be earmarked or identified before a lien will attach, has been abandoned both in England and this country. But the applications of the more liberal and logical modern view are far from uniform. Most cases hold that positive identification of the property or fund is not necessary to afford the plaintiff a right to priority. The *crux* is here: Must it appear that the residuary assets, so to speak, those which passed into the hands of the assignee, receiver, administrator or other representative, are greater because the trust property or fund, or its substitute, *is actually contained therein,* or does it suffice to show the trustee used the fiduciary property in his business prior to becoming insolvent, so that, presumptively, the estate is thereby better off? The rule may be applied according to either theory, but the two rest on entirely different bases. The first is simply a reasonable extension of the earmark doctrine, permitting a person to take what belongs to him; the other is a preference allowed on supposed equitable grounds. The underlying principle of the equity was, originally, that the *cestui que trust* was entitled to his property from the hands of the insolvent to whom it had been confided as his representative. He stood, not as a creditor with a demand, but as owner; and the rights of creditors were unaffected by turning over to him his own, since their debts were only claims against what the insolvent held in his own right and not in trust for others. "The right to follow trust funds has its basis in the right of property, and the court proceeds on the principle that the title has not been affected

by the change made of the trust funds," said Justice Peck-
ham in Holmes v. Gilman, 138 N. Y. 369.   The doctrine
is akin to the legal one that a bailor may follow the article
bailed into any person's hands and recover it, so long as its
identity remains unimpaired (Hendricks v. Evans, 46 Mo.
App. 313), and, like other equitable remedies, was invented
for instances not adequately relieved at law.   It was by com-
parison with a case of bailment of merchandise to a factor
that Lord Hardwicke held money could not be followed in
equity because "it had no earmark," thus founding the ear-
mark rule.   Whitcomb v. Jacob (1711) 1 Salk. 161.   But
if the money was turned by the trustee into a note or other
property capable of identification, this could be followed either
at law or in equity.   Ryall v. Rolle, 1 Atk. 165; Scott v.
Surman, Willes, 400; Ex Parte Sayers, 5 Ves. 169; Taylor
v. Plummer, 3 M. & S. 562.   Lord Hardwicke's authority
was ultimately overruled because money can be earmarked or
identified, as well as other things.   Kept in a separate recep-
tacle, it is perfectly susceptible of identification.   The cases
very rationally, therefore, extended the rule to include money,
as well as other definitely ascertainable articles.   Taylor v.
Plummer, supra; Ex Parte Dale & Co., 11 Ch. D. 772.   It
was not long before it was ruled, in a series of cases, that the
trust fund may be pursued by the *cestui que trust* into the
hands of the insolvent's representatives although indistin-
guishably commingled with his own; provided it is clearly
shown that the fund, its product or substitute, is actually in the
mass—whenever there is distinct proof that the trust property
passed into the estate held by the trustee's representatives.
Pennell v. Dyfell, 4 D. M. & G. 372; Knatchbull v. Hallett,
13 Ch. D. 708; Birt v. Burt, reported in note to Ex Parte
Dale, 11 Ch. D. 773; Taylor v. Plummer, supra; Ex Parte
Cook, 4 Ch. D. 123; National Bank v. Insurance Co., 104
U. S. 54.   After the courts had shaken off the bondage of the

earmark theory, it resulted naturally that they should declare a charge in favor of *cestuis que trustent* on the mass of the insolvent's assets if the trust money was commingled with them so as not to be separable, provided it was still there. Knatchbull v. Hallett, supra; National Bank v. Insurance Co., 104 U. S. 54; Oliver v. Piatt, 3 How. 333. In such instances, all the assets of the trustee will be treated as trust property except what he can distinguish as his own. The burden is on him. Nat. Bank v. Ins. Co., supra. And where the party sustaining the fiduciary relationship dies, his executor or administrator takes the property subject to the same equities that existed against the decedent. Tiernan's Ex'r v. Building & Loan Ass'n, 152 Mo. 135.

The foregoing propositions are supported by practically all the authorities, but most of them stop at this point. Where is is found the fund was dissipated by the insolvent and did not reach his representative, or sufficient proof to trace it there is lacking, relief is commonly denied. Slater v. Oriental Mills, 18 R. I. 352; Cavin v. Gleason, 105 N. Y 256 (1887); Steamboat Co. v. Locke, 73 Me. 514 (1882); Goodell v. Buck, 67 Id. 514 (1887); McLarren v. Brewer, 51 Id. 402; Thompson v. White, 45 Id. 445; Appeal of Hopkins Ex'r (Pa.), 9 Atl. Rep. 867 (1897); Thompson's Appeal, 22 Pa. St. 16 (1853); Cunningham's Est., 2 Am. L. Reg. (O. S.), 120 (1885); Jeffris' App., 33 Pa. St. 39 (1859); Abbott v. Reeves, 49 Id. 494 (1865); Wylie's and Quail's App., 92 Id. 196 (1879); People's Bank App., 93 Id. 107 (1880); Williams' App., 101 Id. 474 (1882); Seguin's App., 103 Id. 139 (1883); Neely v. Reed, 54 Mich. 134 (1884); Bank v. Weems, 69 Texas 489; Bank v. Russell, 2 Dill. 215, 217 (1873); In re January, 4 N. B. R. 100 (1874); In re Coan, etc., Mfg. Co., 12 Id. 203 (1875); Knatchbull v. Hallett, Pennell v. Deffel, Ex Parte Hardcastle, Bank v. Insurance Co., all supra; Frith v. Cartland, 2. H. & M. 417; In re

Mason, 44 L. T. (N. S. 523); Philadelphia Nat'l Bank v. Dowd, 38 Fed. R. 172; Commercial Nat'l Bank v. Armstrong, 39 Fed. R. 684. The doctrine is based on a fiduciary relationship—a trust. But there can be no such thing unless there is property held in trust. If it is gone, on what shall the trust subsist? If, in such case, a charge is declared in favor of the plaintiff, despite the fact that there is no trust property left, it is necessarily allowed him in some other capacity than as a *cestui que trust.* It must then be on a principle somewhat analogous to that on which compensation is granted to an ejected purchaser of land for improvements made on it in good faith. The trust money having gone to the betterment of the insolvent's estate, he is afforded compensation. Such is the only plausible, consistent theory to justify the relief. This doctrine was announced in Meyers v. Board of Education, 51 Kan. 87; McLeod v. Evans, 60 Wis. 401; District v. King, 80 Iowa 497; Bank v. Hummel, 14 Colo. 259; San Diego Co. v. Bank, 52 Fed. 59; Peaks v. Ellicott, 30 Kan. 156. These authorities hold that enrichment of the estate by trust money suffices, and some of them that its use in the bankrupt's business warrants the conclusion of enrichment. The Wisconsin decisions to that effect were subsequently overruled. Nonotuck Silk Co. v. Flanders (Wis.), 58 N. W. 383. It is obvious these cases do not, in fact, whatever they may assume to do, treat the question according to the law of trusts. They simply allow a preferential equity on other grounds. While that is a departure from the original principle on which relief was granted, it is not necessarily unjust if the charge is allowed for no more than it clearly appears the estate was benefited. Creditors will be no more damaged by taking that sum out of the assets, although the trust money is not shown to be there, than they are by subtracting the amount of the original fund from them when it is shown to be there. But if it is carried further an injustice arises; which consists

in assuming the estate was enriched, increased or benefited merely because trust property was received by the insolvent. It is at once seen that this presumption is unwarranted. The fiduciary fund may have been squandered, lost or destroyed.

When we inquire what the rule is in this jurisdiction, the answers given by the opinions which treat of it are fluctuating. A departure from the earmark rule was recorded in Harrison v. Smith, 83 Mo. 210. The trust fund in that case was probably untraceable into the residuary assets taken by the bank's assignee; but those assets were increased by it, because it had been received by the bank only a few days before the assignment was made and mingled with its other funds. The decision is authority for the doctrine that it is sufficient if the residuary assets are benefited although the fund is not among them; but is not authority that the mere reception and conversion to his own use by an insolvent of trust money, entitles its owner to priority. It is wholly inconsistent, of course, with the theory that the *cestui que trust* was recovering his own property, which he was bound to identify. In other words, it departed from the principle that title was necessary in the plaintiff and from the equitable doctrine of trusts. The trust property was entirely gone.

The same observations may be made concerning Stoller v. Coates, 88 Mo. 514, where the facts were not materially different. The bank got the money a few days before failing and paid it out in the course of business; but the estate taken by the assignee was bettered by its use.

So in Bank v. Sandford, 62 Mo. App. 394; Leonard v. Latimer, 67 Mo. App. 138; Bircher v. Sheet Metal Ornament Co., 77 Mo. App. 509; Evangelical Synod v. Schoeneich, 143 Mo. 652; Pundmann v. Schoeneich, 144 Mo. 149; Brick Co. v. Schoeneich, 65 Mo. App. 283; Tiernan's Ex'r v. Building and Loan Ass'n, 152 Mo. 135; Wittich v. Zumbalen, not yet reported. The Schoeneich cases, which grew out of the fail-

ure of S. H. Merton & Co., of St. Charles, Missouri, discuss this question exhaustively, particularly the Evangelical Synod case, 143 Mo., supra. In that instance, the insolvent firm had the use of the trust deposits in their business; but no portion of them had passed into the hands of the assignee, either as distinctly earmarked or mingled with a mass of money on hand at the time of the failure, for there was practically no money on hand. This is true of most of the cases just cited and excludes the belief that the trust assets could be traced into the estate of the trustee. But it was positively shown in the Evangelical Synod case that the money had been used in the course of the insolvent firm's business, and not lost, destroyed nor wasted; so the inference was fair that the estate was larger on account of the use of the trust fund.

There is another line of cases in which priority has been denied the trust claimant, among which may be noticed Midland Nat'l Bank v. Brightwell, 148 Mo. 358; Paul v. Draper, 158 Mo. 197; Ulrici v. Boeckeler, 72 Mo. App. 661; Meystedt v. Grace, 86 Mo. App. 178.

In Midland Nat'l Bank v. Brightwell, 148 Mo., supra, the Midland Bank's paper had gone into the Slater Savings Bank, of which Brightwell was assignee, only five days before the failure. The opinion approves all the previous cases, holding such preferences to be sound in principle, but contains this expression which harks back to the older theory. "The creditors of an insolvent person or corporation are entitled to subject his estate to their demands, but justice and equity give them no right to appropriate the estate of another which he holds in trust." The plaintiff was refused a recovery because no funds had actually been received by the Slater Savings Bank, as the whole claim grew out of an exchange of credits on the books.

There are recent decisions on the subject: Paul v. Draper, 158 Mo. 197; Bircher v. Walther, 63 S. W. 691. The

last case reversed the judgment of this court decreeing a prefer-
ence. Bircher v. Sheet Metal Ornament Co., 77 Mo. App.,
supra. There, as here, the fund intrusted to the insolvent by
the plaintiff appeared to have been paid out in the course of
business and a lien was refused because there was no evidence
to show that any part of it passed to the trustee under the com-
pany's deed of trust. The opinion undertakes to collect the
true doctrine from all the cases and states it as follows: "The
rule is, as we understand it, that if trust property has been
mingled by the trustees with his own property, so that one can
not be distinguished from the other, and he transfers his prop-
erty to a trustee or assignee for the benefit of his creditors, a
court of equity, as between the *cestui que trust* and the per-
sonal creditors of the trustee, will follow the trust property
or its proceeds, *and if the same can be traced into the property
or assets transferred to the trustee or assignee,* will impress
upon such property or assets a lien in favor of the *cestui que
trust* to the extent that the property or assets transferred have
been swelled by the trust property or its proceeds. This
equitable lien is based upon the idea that the trust property or
its proceeds, though not distinguishable, *is in the assigned prop-
erty or its proceeds, in some shape, and not upon the fact that
the trustee wrongfully commingled the trust property or its
proceeds with his own,* and the proceeding in equity is not to
charge the property or assets in the hands of his trustee or
assignee with his wrongdoing. But is in fact, though not in
form, a proceeding in equity between the *cestui que trust* and
the personal creditors of the trustee for an equitable separa-
tion of the trust property or its proceeds, which should go to
the *cestui que trust,* from the debtor's own property or its pro-
ceeds which should go to his personal creditors; or, rather, for
an equitable adjustment on that basis."

The rule thus enunciated requires the trust fund or its
proceeds to be still mixed with the mass of the insolvent's

estate in the hands of his assignee, trustee or other representative, in order for a preferential lien to be declared, and holds that the fact that it was at one time wrongfully mingled with it, is insufficient to authorize a preference. Whether this view, which was also taken in Paul v. Draper, 158 Mo., supra, is strictly consistent with all that was said in some of the other cases, need not be discussed. It is the law as declared in the latest decisions of our Supreme Court and must control the determination of the present controversy adversely to the prayer of the petition as to the decedent's general estate and, *a fortiori,* as to the insurance policy.

The judgment of the lower court is, therefore, reversed and the bill dismissed. All concur; *Bland, P. J.,* in a separate opinion.

### CONCURRING OPINION.

BLAND, P. J.—I concur in the foregoing opinion because the evidence fails to show that the assets which went into the hands of the administrator, Haydel, were enriched or swelled by the trust fund.

### OPINION ON MOTION TO MODIFY JUDGMENT.

GOODE, J.—On the stipulation of the parties hereto the opinion is modified by reversing the judgment of the court below and instead of dismissing the bill, the cause is remanded with directions to said court to enter judgment against the estate of said Frances L. Haydel, deceased, for the sum to which it may appear the plaintiff is entitled; refusing to declare a preferential lien in favor of the plaintiff for the amount of said judgment on the assets of the deceased in the hands of his administrator. The costs of the appeal, the costs incurred in this court and in the circuit court, to be paid by the plain-

tiff inasmuch as the only controversy between the parties was as to plaintiff's right to such preferential lien.