RAYMUTH REAL ESTATE & BUILDING COM-
PANY, a corporation, Appellant, v. C. J. ROBIN-
SON, Admr., cum testamento annexo of the es-
tate of SYLVESTER J. FISHER, deceased, Re-
spondent.

St. Louis Court of Appeals. Argued and Submitted May 8, 1918.
Opinion Filed June 4, 1918.

1. **EXECUTORS AND ADMINISTRATORS:** Claims Against Estates:
   Priority: Collections by Agent: Trust Fund: Equity. In a suit in
   equity, by which it is attempted to charge the assets of the estate
   of a real estate agent, deceased, in the hands of his administrator,
   with a special lien against those assets, on the claim that moneys
   collected by such agent in his lifetime, as rentals of the property
   of plaintiff, went to swell and increase his assets during his life-
   time, and had passed into the possession and control of his ad-
   ministrator, where it affirmatively appears that none of this money
   passed to the administrator, and that all of the money that he had
   was derived from the sale of real estate and personal property, and
   even that was realized from the sale of the equities of deceased
   in these properties; *held* that there is an entire lack of any evi-
   dence that the money, rentals of plaintiff collected by deceased,
   went to the benefit of or swelled the estate to the amount of the
   trust property or its proceeds, much less that any of it ever came
   into the hands of the administrator.

2. ———: ———: General Claim. There is no statute in Missouri
   that provides for "a general claim," no such term being used in
   the classification of demands against an estate.

3. **COURTS:** Circuit and Probate Courts: Suit Against Administrator:
   Certification of Claims. Furthermore, there is no rule of practice,
   or statute in Missouri, by which, in such case, on the failure of the
   claimant to establish his demand as a preferred claim, it is within
   the power of the circuit court to order it certified to the probate
   court for allowance.

4. **APPELLATE PRACTICE:** Trial Practice: Theory of Case in Trial
   Court. The appellate court will not remand the cause with direc-
   tions to enter the claim against the estate, when no such point
   was made in the trial court, and such an order is resisted by the
   administrator.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. William M. Kinsey,* Judge.

Real Estate & Building Co. v. Robinson.

AFFIRMED.

*Thomas S. McPheeters* for appellant.

(1) Where trust funds are wrongfully commingled and converted by the trustee and the general assets of the trustee are thereby benefited, equity will charge those assets with the amount of the converted fund as a preferred demand. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; Evangelical Synod v. Schoeneich, Admr., 143 Mo. 652. (2) While the mere receipt and conversion to his own use of trust funds by an insolvent trustee will not entitle the owner of the fund to a prior lien, if it appears that the insolvent's estate in the hands of the administrator or assignee has been enriched or benefited by the use of the trust funds, then a prior lien to that extent should be declared. Evangelical Synod v. Schoeneich, Admr., 143 Mo. 652; Pundmann v. Schoeneich, Admr., 144 Mo. 149; In re Assignment v. Zumbalen, 85 Mo. 671, 674; Bircher v. Walther, 163 Mo. 461; Pearson v. Haydel, 90 Mo. App. 253. (3) If it appears that the trust funds were not lost, destroyed or wasted, but were used by the trustee in his business, in paying his debts and in protecting his property, from these facts equity will presume that the insolvent's estate was benefited thereby and a prior lien should be declared. Evangelical Synod v. Schoeneich, Admr., 143 Mo. 652; Pundmann v. Schoeneich, Admr., 144 Mo. 149; In re Assignment v. Zumbalen, 85 Mo. App. 671, 674; Bircher v. Walther, 163 Mo. 461; Pearson v. Haydel, 90 Mo. App. 253.

*John M. Wood* for respondent.

(1) As it does not appear from the evidence that the money of plaintiff or any part thereof, or the proceeds thereof, was in the estate or belonged to the estate of said Fisher, at the time of his death, or has been received by the defendant as administrator, the plaintiff is not entitled to have a lien on the assets of the estate

superior to that of the other creditors, or to have its claim preferred over the claims of other creditors. Bircher v. Walther, 163 Mo. 461; Pearson v. Haydell, 90 Mo. App. 253.

REYNOLDS, P. J.—This is a suit in equity, by which it is attempted to charge the assets of the estate of Sylvester J. Fisher, deceased, in the hands of his administrator, with a special lien against those assets, on the claim that moneys collected by Fisher in his lifetime, as rentals on the property of plaintiff, went to swell and increase the assets of Fisher during his lifetime, and had passed into the possession and control of defendant as administrator, and "are now in the possession and control of said administrator and so mingled with the funds, property and assets of said Fisher in his hands that it is not possible to separate, identify or distinguish plaintiff's funds in his possession, or that said funds of plaintiff were paid out by said Fisher during his lifetime in the course of his business and used in paying his debts and obligations of various kinds, thereby enhancing the value of the estate received by this defendant as administrator and plaintiff declares that it believes that either said funds of plaintiff as aforesaid actually passed into the hands of said administrator as aforesaid, or that said funds of plaintiff were paid out by said Fisher during his lifetime as aforesaid, but this plaintiff is not informed as to which of said alternatives is true;" and that the estate of Fisher is insolvent and that there are large claims, exceeding its assets, against it.

The cause was tried before the court as in equity.

At the trial of the cause the defendant administrator, being sworn as a witness in behalf of plaintiff, plaintiff offered and read in evidence the answer of defendant, as also a former answer, but that is not in the abstract.

Counsel, after stating the formal averments of the petition as to incorporation of plaintiff and appointment of defendant, and that he is now in charge of the

estate, having taken possession of the assets, real and personal, owned by Fisher at the time of his death, and that up to the time of his death he was engaged in the business of a real estate agent, under the name of Fisher & Company, and as such was in charge of the apartment building mentioned, collecting rentals thereon and accounting to plaintiff and remitting them monthly to plaintiff, and that at the time of his death was in possession of $1056.66, representing rentals belonging to plaintiff, and that he had mingled these funds with his own and other funds, so that they cannot be now distinguished, summarized the testimony of the administrator, to the effect that he is such administractor and had taken charge of such assets as he could find and sold and converted them into cash; that in his last annual settlement, filed just a week previous to the trial, that is, about March 28, 1915, more than three years after the death of said Fisher, he had on hand in cash the sum of $8187.89; that in addition he held 193 shares of the stock of Fisher & Company Real Estate Company, a corporation, which he thought ought to be worth about $100 a share. The witness testified that Fisher carried on his real estate business under the name of Fisher & Company, and that he had a separate corporation, a holding company, called the Fisher & Company Real Estate Company, in which, as stated, he held 193 shares of stock of the par value of $100 per share, and the corporation was capitalized for $20,000.

He futher testified that claims had been allowed against the estate up to October 16, 1913, amounting to $65,660.98; that of these claims there was only one first-class claim, which was for funeral expenses, amounting to $705, and that there was only one second-class claim for medical services, amounting to $184, and that there were no claims of the third and fourth class, but that all the claims allowed. except the two mentioned, were of the fifth and sixth class.

He testified further that there were no suits pending in which a similar claim for preference was made.

He further testified that no cash came into his hands as administrator and that he took over nothing but real property and personal property other than cash.

On cross-examination defendant testified that he had received no money out of the safe or from the National Bank of Commerce, representing money collected for the account of Fisher, himself, or any of Fisher's clients. Practically all of the general or fifth and sixth class claims allowed against the estate were similar to plaintiff's, that is to say, rents collected by Fisher and deposited and mixed with his personal funds.

He further testified that a judgment was secured by Joseph Wright executor of one Susie M. Rodgers, for $13,000, including interest and costs, and that judgment was against Fisher personally and against the Fisher & Company Real Estate Company, a corporation; that it was a reference case and the case was pending in court on the exceptions to the referee's report at the time of Fisher's death and culminated in judgment after his death. That between January 3rd and January 20th, Fisher collected for plaintiff, on account of rents, the sum of $1056.66, and that amount was placed in Fisher's safe or deposited in the Bank of Commerce or both, and mingled with Fisher's personal funds and the funds of other clients; that during January, 1912, and for many years prior to his death, clients of Fisher were paid by him either in cash taken out of the funds so mixed and deposited in the safe, or by check against the funds so mixed and deposited in his bank accounts; and a part of the personal expenses of Fisher were also paid out of these funds in the same way. That on January 1, 1912, Fisher had in his safe the sum of $130.90, and in bank $574.95, being his own money, in addition to cash in the safe and on deposit belonging to clients; that during the month of January, prior to his death, Fisher, in addition, collected for his personal account and mingled with his clients' funds the further sum of $561.11; that during the same month he collected for his clients alone $30,003.86, $4651 of which amount was collected between January 20th and 23rd.

Whereupon counsel for plaintiff stated that to save time he would admit that all of the allegations in the answer as regards the amounts collected or paid out or mingled were correct, including the source from which the money came, and the dates.

Witness Robinson, continuing, testified that the value of the stock of the Fisher & Company Real Estate Company, which he held amounted to about $16,000, and was in the form of cash; that the corporation was a defendant in the suit brought by Wright, executor of Susie M. Rodgers, in which case judgment for $13,000 was recovered; that it was also a defendant in the McCausland Case, which was for about $30,000, pending before a referee; that the McCausland Case did not proceed against Fisher as an individual or against his estate.

The above and foregoing, together with the answer, was all the evidence introduced or heard in the trial of the cause.

The answer, in substance, admitted that Sylvester J. Fisher died January 23, 1912, testate; that by the course of dealings between plaintiff and Fisher, the latter would collect rental from the building and remit to plaintiff, after deducting his commission of one and a half per cent. as such agent. It is also admitted that it was the practice of Fisher in his lifetime, as hereafter more fully set forth, to mingle with his individual funds and trust funds collected for numerous other patrons, the rentals collected for plaintiff. It is further admitted that the estate of Fisher is insolvent and that the claims that have been allowed against the estate aggregate a sum many times larger than the assets of the estate. Further answering, however, the defendant denies that the money mentioned in the petition as having been collected and received by Fisher for plaintiff, or any part thereof, has been received, or came into the hands of defendant since his appointment as administrator, and defendant denies that the moneys of plaintiff and of other customers of Fisher and his personal funds which were mingled and mixed in said depositories, or any part thereof had been received by defendant since his appointment as adminis-

trator of the estate, defendant averring that the only moneys he had received as such administrator had been derived from collections made for the estate and from the sale of property belonging to the estate; and that at the time of the death of Fisher, he had no money whatever on hand. Further answering, denying all the averments in the petition, except as above admitted, defendant states that Fisher, at the time of his death and for several years prior thereto, was insolvent; that during the month of January, 1912, preceding his death, and for many years immediately preceding his death, Fisher, in the conduct of his business as real estate and loan agent, continuously mixed and mingled with his personal funds moneys collected and received by him for his patrons and held in trust for them, including collections made for plaintiff; that Fisher, during several years immediately preceding his death, deposited a part of the funds of his patrons and of himself, so mixed and mingled together in an iron safe kept in his office, and the remainder in the National Bank of Commerce of the city of St. Louis, to his personal credit, under the name of Fisher & Company, which was the name under which he usually did business; that on and between the 3rd and 20th days of January, 1912, Fisher collected for plaintiff, on account of rents for the apartment houses, the sum of $1056.66, which, less his commission of one and a half per cent., or $15.85, was the total indebtedness of Fisher to plaintiff at the time of his death; that this amount was deposited in the safe or bank, or both, and mingled with the personal funds of Fisher, if any he had, and with the funds of other patrons of Fisher in such safe and bank; that during the month of January, 1912, prior to his death and for many years prior to his death, the patrons aforesaid of Fisher, for whom collections were made and deposited, as above stated, either in the safe or in the bank, or in both, were paid by Fisher either in cash taken out of the funds so mixed or deposited in the safe, or by check against the funds so mixed and deposited in the name of Fisher & Company in the bank; that part of the personal expenses of Fisher were also paid out of these funds.

in the same way; that on the first day of January, 1912, there was of said amount so deposited in the safe in the office of Fisher, a balance of $130.90; that at the last mentioned date there was of the fund in the bank to the credit of Fisher, under the name of Fisher & Company, the sum of $574.95; that during the month of January, 1912, and prior to his death, Fisher collected for his personal account and mingled with the funds of his patrons and deposited in the manner aforesaid, the sum of $561; that during the month of January, 1912 and prior to his death, Fisher collected and deposited in the depositories mentioned, moneys belonging to his patrons in the sum of $30,003.86—$4651.93 of which amount was deposited on and between January 20 and 23, 1912; that during the month of January, 1912, and prior to the 20th day of that month, Fisher paid out of the funds above mentioned, which had been deposited in the safe and bank, in discharge of his personal indebtedness, the sum of $2356; that this amount was made up of the following items and for the amounts after each, namely:

| | |
|---|---:|
| For salaries of employes, | $843.85 |
| For board of himself and family and other incidental expenses, | 711.16 |
| For nurse for himself, | 110.00 |
| For maturing interest on personal indebtedness, | 512.30 |
| For advertising property for sale and rent in a newspaper, | 100.00 |
| For premiums on life insurance policies in favor of his wife, | 55.25 |

That on and between January 20 and 23, 1912, Fisher paid out of the fund so deposited in the safe and in the bank, for his personal expenses, the further sum of $52; that during the month of January, 1912, and prior to his death, Fisher paid out to his patrons, whose money he had collected and deposited in the safe and bank above mentioned, the sum of $25,535.86; that on the day of his death, to-wit, January 23, 1912, Fisher gave to one Lassen a check for $3400.87, drawn on the mixed fund deposited

in bank, the proceeds of the check to be applied to paying patrons for whom Fisher had collected money and deposited and mingled the same with that of his own and of other patrons, in the National Bank of Commerce, as before stated; that while at the time the check was made, Fisher and Lassen supposed there was a balance of $3400.-87 in the account at the bank, to the credit of Fisher & Company, after allowing for the payment of all outstanding checks theretofore issued against the same, there was in fact outstanding unpaid checks aggregating $436.39, issued against the account by Fisher, in January, 1912, and in favor of his patrons whose money he had received and deposited in said account in said bank; that this check for $3400.87 accordingly overdrew the account to the extent of $436.39; that out of the proceeds of the check for $3400.87, Lassen, on January 23, 1912, prior to the death of Fisher, paid to the patrons of Fisher, whose moneys had been deposited by Fisher in the bank, the sum of $2104.06, and subsequently paid out of said proceeds the overdrafts or unpaid checks aggregating $436.39, and applied the balance of the proceeds of the check for $3400.87 to the payment of other patrons of Fisher, whose moneys Fisher had theretofore deposited in the bank in the account with funds of his other patrons and with his personal funds; that all of which facts in reference to the money that Fisher had on hand on the first day of January, 1912, and in respect to moneys collected and received by him for his own account, and the disbursements of the moneys more fully appear by reference to an itemized statement filed with the answer. It is further set out in the answer that Lassen died in September 10, 1914; that at the time he had received the check for $3400.87, he was insolvent and continued to be insolvent up to the time of his death. Defendant further sets up that the larger part of the demands allowed against the estate of Fisher arose out of moneys collected or received by Fisher from his patrons and which he had mixed and mingled with his own and the moneys of other patrons in the depositories before men-

tioned and had paid out in the discharge of his personal expenses and on account of money due other patrons, whose money he had received and deposited in the depositories. Defendant further states that the rentals collected by Fisher for plaintiff in nowise swelled or increased the assets of Fisher. The answer concludes with a denial of any claim of plaintiff to the lien or preference as claimed in the petition, and avers that plaintiff is not, in equity, entitled to have this claim preferred above the claims of the other creditors of the estate.

There is a reply to this, and on the conclusion of the trial the court dismissed the bill. Filing a motion for new trial and excepting to its overruling, plaintiff has duly appealed.

Appellant assigns for error the action of the court in dismissing plaintiff's bill and in not entering a decree in favor of plaintiff, and in not ordering plaintiff's claim to me preferred above the claims of general creditors of Fisher's estate, and in dismissing plaintiff's bill without even decreeing a judgment in favor of plaintiff for the amount sued for and admitted by the defendant to be due.

We have concluded, on an examination of the authorities, that the action of the trial court in dismissing the bill is in accordance with the holding of our Supreme Court in Bircher v. Walther et al., 163 Mo. 461. 63 S. W. 691, and that of our court in Pearson v. Haydel, 90 Mo. App. 253; and Hunter v. Mathewson, 149 Mo. App. 601, 129 S. W. 749.

In the Bircher Case, which went to the Supreme Court from our Court, as see Bircher v. St. Louis Sheet Metal Ornament Co., 77 Mo. App. 509, it is said by our Supreme Court that in the case of Paul v. Draper, 158 Mo. 197, 59 S. W. 77, the court had occasion to examine all the Missouri cases on the main question in hand (which was as to the right of plaintiff to a preference out of the assets in the hands of an assignee), and while in Paul v. Draper, it did not become necessary to formu-

late the rule to be deduced, not from dicta, but from the rulings of the appellate courts of this State on the facts in judgment in those cases, that it is well to state the rule in the case then before the court. The court then stated the rule as follows, quoting the syllabus:

"If trust property has been mingled by a company with its own property, so that the one cannot be distinguished from the other, and it transfers its property to a trustee or assignee for the benefit of its creditors, a court of equity, as between the *cestui que trust* and the personal creditors of the company making the assignment, will follow the trust property or its proceeds, and if the same can be traced into the property or assets transferred to the trustee or assignee, will impress on such property or assets a lien in favor of the *cestui que trust* to the extent that the property or assets transferred have been swelled by the trust property or its proceeds. But, if there is no evidence that the trust property, or its proceeds, went to swell the company's assets transferred to the assignee for the benefit of creditors, but on the contrary was paid out on the debts of the company and for its current expenses, this rule cannot be invoked, and a court of equity ought not to decree the claim of the *cestui que trust* to be a preferred claim over that of other creditors."

This is a fair synopsis of the opinion, which is an elaborate discussion of the rule and the principle upon which it rests.

Learned counsel for appellant challenges the deduction drawn from this Bircher Case and claims that it is inconsistent with what was said by our Supreme Court in Harrison v. Smith, 83 Mo. 210; Stoller et al. v. Coates, 88 Mo. 514; Evangelical Synod of North America v. Schoeneich, 143 Mo. 652, 45 S. W. 647; and Pundman et al. v. Schoenich, 144 Mo. 149, 45 S. W. 1112. It is true that the Supreme Court, in the Bircher Case, did not refer to these cases, and that what is there, as also in Paul v. Draper, held, is not in line with those and earlier cases, but the Supreme Court had before it the opinions of our

court in that case; that it did not notice them by name is immaterial, for in Pearson v. Haydel, 90 Mo. App. 253, l. c. 265, Paul v. Draper, supra, and Bircher v. Walther et al., supra, set out the law "as declared in the latest decisions of our Supreme Court and must control the determination of the present controversy adversely to the prayer of the petition as to the decedent's general estate." See also as germane to the main point here involved and in line with the Paul and Bircher Cases, Midland National Bank of Kansas v. Brightwell, 148 Mo. 358, 49 S. W. 994.

Our court in Pearson v. Haydel, above referred to, did, however, examine not only all the cases cited by counsel for appellant from our own courts, but those of other jurisdictions, and in conclusion followed the Bircher decision, specifically holding that the rule in equity requires the trust fund or its proceeds to be mixed with the mass of the insolvent's estate in the hands of his assignee, trustee, or other representative, in order for a preferential lien to be declared, and holds that the fact that it was at one time wrongfully mingled with it, is insufficient to authorize a preference. We cannot improve upon, and it is unnecessary to enlarge upon, what is there so well said by Judge GOODE, and we refer to that decision as here conclusive.

In Hunter v. Mathewson, supra, Judge GOODE, speaking for our court and discussing the rule here applicable very fully, held that the trial court evidently had in mind the doctrine that the owner of a fund may follow it into the hands of an assignee for creditors and secure a lien on the assigned assets if he can show his money passed to the assignee, citing Paul v. Draper, supra. But, said Judge GOODE, that doctrine is not applicable when it is clear that no money belonging to the plaintiff came into the hands of the assignee.

In the case at bar, it affirmatively appears that none of this money passed to the administrator in this case. All the money that he had was derived from the sale of real estate and personal property, and even that was real

ized from the sale of the equities of Fisher in these prop-
erties. So that there is-here an entire lack of any evi-
dence that the money, rentals of the plaintiff collected
by Fisher, went to the benefit of or swelled the estate
to the amount of the trust property or its proceeds, much
less than any of it ever came into the hands of the ad-
ministrator. Nor were the moneys that were in the
hands of Fisher and which he had paid out before his
death, exclusively moneys derived from the rentals of
this plaintiff. They amounted to a large sum and were
moneys received and collected by Fisher from a multi-
tude of his patrons, of which the amount that he col-
lected as rentals from plaintiff's property was com-
paratively small in proportion.

It is said, however, by learned counsel for appellant
that if plaintiff is not entitled to a lien for the full
amount of his claim, it should, at least, be entitled to a
lien to the extent of $513.30, the amount used by Fisher,
as it is said, in the payment of his mortgage indebted-
ness. The trouble with this contention is, there is no
evidence in the case to sustain this proposition. All
that the evidence shows as to this is that that amount
of money was paid out by Fisher on his personal account,
but it does not appear by the evidence in the case for
what purpose or on what account it was paid out.

It is further claimed by learned counsel for appel-
lant that the trial court should have allowed plaintiff's
demand "as a general claim," and certified it to the
Probate Court as such. We are not aware of any stat-
ute of our State that provides for what counsel calls
"a general claim," no such term being used in the classi-
fication of demands against an estate. Furthermore,
we are aware of no rule of practice, or statute, by which,
in a case such as this, on the failure of the claimant to
establish his demand as a preferred claim, it is within
the power of the circuit court to order it certified to the
Probate Court for allowance. Finally, and conclusively
on this proposition, no such point was made in the trial
court. It is true that in Pearson v. Haydel, supra, our

court remanded the cause with directions to enter judgment for the amount against the estate, but that was done, as stated, on stipulation of the parties. Here we have no such stipulation and respondent objects.

The judgment of the circuit court should be and it is affirmed. *Allen* and *Becker, JJ.*, concur.