HORIGAN REALTY COMPANY, Appellant, v. FRANK J. FLYNN, Administrator of the Estate of JOHN J. FLYNN, Deceased, Respondent.

In the Kansas City Court of Appeals, April 30, 1923.

1. **TRUSTS AND TRUSTEES: Commingled Trust Funds: The Rule on Which Equity Grants Relief to Owner of Property Entrusted to Another Who Commingles Trust Property With His Own Stated.** Where a trustee commingled trust funds and property with his own and made a transfer thereof to an assignee or representative of the trustee, the *cestui que trust* was entitled to follow and recover the trust property or fund, where it is shown that the same, or its substitute, formed an actual part of the total property going into the hands of the assignee or representative of the trust so

that the amount so received by them as the estate of the trustee was greater than the same would have been, were it not for the existence therein of the trust property.

2. ————: ————: Where Trustee Has Used up or Expended Trust Property in His Business the Cestui Que Trust May Recover the Same from Estate of Trustee in the Hands of His Assignee or Representative Because His Estate Has Been Presumptively Benefited Thereby. Where a trustee has used up or expended trust property in his business, the owner, or *cestui que trust*, by reason of such use, may recover the same from the estate of trustee in the hands of trustee's assignee or representative because the estate of trustee has been presumptively benefited thereby.

3. ————: ————: In an Action Against an Insolvent Estate to Recover Commingled Trust Fund, as a Preferred Claim, Held There Could be no Recovery, Except for That Portion Thereof Which Trustee Had Actually Expended in Preserving the Estate. In an action in equity to charge a certain sum of money as a trust fund against an insolvent estate and to compel its payment out of the assets thereof in preference to the claim of its general creditors, where decedent was shown to have deposited and commingled the trust fund with his own funds in a bank and thereafter checked out and spent most of it for his personal use, for gifts and a small amount for insurance and taxes for the preservation of the property of the estate, which went into the hands of an administrator, *held* that a recovery of the full amount as a preferred claim, on the theory that if deceased had not used the trust fund for purposes above indicated, he would have spent a part of the estate and that therefore the estate must be held to have been benefited by that amount, could not be allowed, as the funds spent and given away by deceased were gone and nothing remained of them to be the subject of the trust, but recovery could only be had for that portion of the fund which was actually used for the preservation of the estate.

Appeal from the Circuit Court of Buchanan County.— *Hon. Lawrence A. Vories*, Judge.

AFFIRMED.

*Randolph & Randolph* for appellant.

*Culver, Phillip & Voorhees* for respondent.

TRIMBLE, P. J.—Plaintiff's action is in equity to charge the sum of $4552.30 as a trust fund against the

estate of John J. Flynn, deceased, and to compel its payment out of the assets of the estate in preference to the claims of its general creditors. The Chancellor found that of the $4552.30 claimed by plaintiff as a trust fund, the sum of $577.33 had been expended by decedent in his lifetime for the preservation of the estate that afterwards went into the hands of his administrator, but that no other part of the $4552.30 claimed is traceable into, nor did it in fact go into, said administrator's hands. The decree, therefore, enforced the above named portion of said trust fund, to-wit, $577.33, as a preferred claim against said estate, but the remainder of the trust fund, to-wit, $3974.97, was refused such preference, and allowed merely as a demand of the 5th class against the estate, to receive its *pro rata* share of the assets thereof along with the general creditors. From this decree the plaintiff has appealed.

There is no dispute as to the facts. The only question in controversy is what the Chancellor should have done in applying the well-established rules and principles of equity to the undisputed facts.

On and long prior to March 30, 1920, John J. Flynn was treasurer of the plaintiff, Horigan Realty Company, and as such had in his hands $5000, face value, of U. S. Government obligations known as Liberty Bonds. On the date above mentioned, said Flynn, without any authority whatever from the Horigan Realty Company, sold said bonds, as though they were his own, for the sum of $4552.30 and deposited said sum to his individual account in the First National Bank of St. Joseph, Missouri.

Flynn was a large stockholder in, and Secretary as well as Treasurer of, the Horigan Supply Company and was an endorser upon more than $240,000 of its notes given for money borrowed. On April 6, 1921, Flynn died. His estate consisted of $15,252.16 in various kinds of personalty and $2000 in realty. He owed debts amounting to $2500 in addition to his liabilities as an endorser upon the Horigan Supply Company's paper as above

stated. These liabilities were very shortly converted into debts against his estate, for the Horigan Supply Company was declared a bankrupt with assets of $53,000 and liabilities of over $300,000, wherefore the holders of its notes, with Flynn's endorsement thereon, had them allowed against his estate. This made his estate also hopelessly insolvent and as it could pay only a small per cent on the claims allowed against it, the only hope of the Horigan Realty Company recovering the money derived from the bonds Flynn converted to his own use and sold, is through the present action to enforce its demand as a trust fund held by said estate or by which it is claimed to have been enriched to that extent.

No part of Flynn's individual account in the First National Bank, wherein he deposited the proceeds of said bonds, went into or made up the personal property of Flynn's estate inventoried or received by his administrator, nor was the real estate purchased by any of the proceeds arising from said bonds.

On January 22, 1920, Flynn's balance in said First National Bank was $79.44. To this he added, of his own funds, the following sums: March 2, 1920, $125.76, March 20, $400, March 27, $1600. On this last named date he checked out to Binswanger $1440 in payment for the real estate which was afterwards inventoried as the realty belonging to his estate. This check of $1440, togetherwith the other checks given by him up to and including that date, left still a balance of $272.88 to his credit, and thus far the money deposited and checked out, including the balance left, was funds belonging to him. The check of $1440 was the only one made by Flynn at any time on his said account which was an investment in property.

It was not until March 30, three days after the above-mentioned real estate was bought and paid for out of Flynn's own funds, that the bonds belonging to plaintiff were sold and the proceeds deposited to Flynn's individual credit. From January 22, 1920, until the date of his death, the deposits to Flynn's individual account,

including the deposit of $4552.30, aggregating the sum of $9040.44. All of this money was, at various times, checked out by Flynn himself for various purposes, as hereinafter stated, except the sum of $2808.12 which was the balance on hand at date of Flynn's death. The administrator did not receive any part of this balance. The bank, as the holder of one of the Horigan Supply Company notes, on which Flynn was security, applied said balance on its note. There is no evidence to show, and it is admitted that no contention is made, that the bank knew or had any notice that the deposit of $4552.30 was not Flynn's money.

The $577.33, which the Chancellor charged as a preferred claim against the estate, was made up of the amounts checked out by Flynn for insurance and taxes on property which did go into the hands of the administrator and was thus allowed by the Chancellor on the theory that it preserved the property of said estate. The rest of the account, aside from the $1440 check for the realty and the $2808.12 applied by the bank on its note, was checked out by Flynn for his personal expenses, except $1000 which he donated to a certain church and $960 which he gave to his son for a wedding present.

Thus it conclusively appears that aside from the $577.33 used by Flynn to protect and preserve the property of his individual estate, no part of said account in the said bank, and consequently no part of the trust fund arising from the sale of said bonds, went into the hands of the administrator or was invested in or became commingled with any property the administrator received, nor did it in any way increase the value of that property. The allegation of plaintiff's petition is that the $4552.30 so received by Flynn as aforesaid "was taken by him and wrongfully commingled with his own property, funds and assets, and the same is now commingled with and forms a part of the assets of said estate now in the hands of said administrator."

The original or fundamental basis on which equity granted relief to the owner of property entrusted to

another, where the trustee after mingling the trust property with his own transferred the whole to an assignee, or died allowing the same to go to his administrator or executor, was that the owner was entitled to follow and recover his property *as owner* wherever it had gone and could be identified. Accordingly, it was formerly held that money could not be followed in equity (save perhaps only in those cases where the specific and identical fund was kept segregated unto itself), because money could not be "earmarked" or identified. But the requirement that trust property had to be thus singled out and designated, before relief would be granted, was abandoned; and it came to be held that specific or positive identification of the property or fund was not necessary to entitle a *cestui que trust* to the relief sought. Two rules or grounds upon which equity acted in such cases thereupon arose. First, which still rests on the former basis, that the owner could recover as owner when it was shown that the trust property or fund, or its substitute, formed an actual part of the total propery going into the hands of the assignee or representative and therefore the amount so received was greater than the same would have been were it not for the existence therein of the trust property. Second, that a plaintiff could likewise recover when it appeared that although the trustee had used up or expended the trust property *in his business,* yet, by reason of such use, the *estate* going into the hands of the trustee's assignee or representative has been presumptively benefited thereby. The second of these proceeds upon the doctrine that since the trustee's estate has been preserved, enriched, or made better, by the expenditure of the trust fund, equity is accorded the one seeking the restoration of his property and no harm is done to those entitled to the distribution of the trustee's estate, when the amount of the trust fund, at least to the extent of the expenditure resulting in such preservation, enrichment, or betterment, is given to the trust fund's rightful owner. Without regard to whether the petition in the case at bar is, according to

its strict technical terms, based upon the first of these rules, it is manifest that plaintiff seeks to maintain its cause of action upon the second one above stated. With regard to this second rule, it may be observed that, as stated by GOODE, J., in Pearson v. Haydel, 90 Mo. App. 253, 261-2, "it is not necessarily unjust if the charge is allowed for no more than it clearly appears the estate is benefited. Creditors will be no more damaged by taking that sum out of the assets, although the trust money is not shown to be there, than they are by subtracting the amount of the original fund from them when it is shown to be there. But if it is carried further, an injustice arises, which consists in *assuming* the estate was enriched, increased or benefited merely because trust property was received by the insolvent." (Italics ours.)

The question in the case at bar is whether or not the facts bring it within the purview of the above mentioned second rule.

Plaintiff claims that they do, and cites, in support of such contention, Harrison v. Smith, 83 Mo. 210; Evangelical Synod v. Schoeneich, 143 Mo. 652; National Bank v. Insurance Co., 104 U. S. 54; Stoller v. Coates, 88 Mo. 514; Tufts v. Latshaw, 172 Mo. 359 and similar cases.

There is no doubt but that the cases cited support the rule we have herein above set forth, but, as stated before, do the facts of the case at bar make that rule applicable? Those cases, it seems to us, go no further than to hold that where one commingles trust funds with his own and any part of the commingled fund goes into the hands of his assignee or administrator, it will be presumed, in the absence of evidence to the contrary, that the trust funds are in the commingled fund and the latter can be charged with the trust; furthermore, that where it appears that the trust funds have been expended in a manner which *benefits* the estate which does go into the representative's hands, the trust can likewise be enforced to that extent as a preference. The said cases nowhere hold that the trust can be enforced where the trustee has spent the trust funds himself so

that the estate which the trustee transferred to an assignee or left at his death neither obtained said trust funds nor derived any benefit therefrom. On the contrary there are other cases which clearly hold that under such circumstances no preference based upon the trust can be given. [Bircher v. Walther, 163 Mo. 461, 467; Raymuth, etc., Bldg. Co. v. Robinson, 199 Mo. App. 515; Pearson v. Haydel, 90 Mo. App. 253; Paul v. Draper, 158 Mo. 197; Hunter v. Mathewson, 149 Mo. App. 601; Beck v. Krembs, 201 Mo. App. 697.]

Manifestly, the trust funds spent by Flynn personally and in gifts to religious and other purposes did not benefit the estate that went into the hands of the administrator. But appellant's theory seems to be that the estate must be held to have been benefited, because, if Flynn had not used the trust funds for the purposes above indicated, he would have converted his property into cash and spent that. It cannot be assumed that he would have done so. No presumption of that kind can be indulged in, in view of what he did do. The object of the suit is not to punish some one for the wrong Flynn did; but the action is really between different creditors of the estate in order to give to the plaintiff what rightfully and in equity belongs to it. The other creditors, benefiting in no way by Flynn's conduct, should not be held responsible for what he did, since they are no more to blame therefor than plaintiff, if indeed as much so, since it was plaintiff itself that put Flynn in the position where he could commit the wrong. The funds spent and given away by Flynn are gone and nothing remains of them to be the subject of the trust. [Ginsberg v. Mears, 170 Fed. 427; City Bank, etc., v. Blackmore, 75 Fed. 771.] It would seem that the Chancellor in this case went as far as the facts and the authorities allow him to go in enforcing the trust or in allowing a preference. Wherefore, his decree is affirmed. All concur.