A. S. THOMSON, RESPONDENT, v. BANK OF SYRACUSE, FRANK C. MILLS-PAUGH, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, AND FRANK J. QUIGLEY, SPECIAL DEPUTY COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, APPELLANTS.

Kansas City Court of Appeals.   January 11, 1926.

1.—Banks and Banking—Title to Paper Deposited in Bank for Collection Held Not to Pass to Bank. Title to paper deposited in bank for special purpose of collection does not pass to bank.

2.—Same—Trusts—Where Bank Collected Note and Deposited Proceeds to Plaintiff's Credit, Fund so Collected Held Impressed With a Trust. Bank in-

structed to make collection of note and remit proceeds to plaintiff, violating such instructions by depositing proceeds to plaintiff's credit in bank, **held** that the fund collected was impressed with a trust.

3.—Same—Collection of Note Held to Augment Assets of Bank. In an action to establish preferred claim against defunct bank, based on failure of bank to remit proceeds received by it from collection of note deposited with it by plaintiff for collection, **held** to show that collection augmented assets of bank.

4.—Same—Failure of Bank to Remit Interest Paid on Note Held Impressed With a Trust. Interest on note paid bank by check on debtor's open checking account and passed to permanent assets of bank in violation of instructions, and the same was not remitted to creditor, **held** such fund was impressed with a trust.

5.—Same—To Recover Fund in Insolvent Bank Impressed With a Trust Plaintiff Required to Follow the Fund Into Bonds of Commissioner of Finance. To recover proceeds of note collected by bank, which it failed to remit to plaintiff as instructed, such fund being impressed with a trust, it was encumbent upon plaintiff to follow the fund into the hands of Commissioner of Finance and there claim it.

6.—Same—Plaintiff Held to Have Sustained Burden of Following Trust Fund Into Hands of Commissioner of Finance. In action to establish preferred claim against insolvent bank, based on failure of bank to remit proceeds of note received by it in collection thereof on the ground that such fund was impressed with a trust, **held** plaintiff sustained burden of following the fund into hands of Commissioner of Finance.

7.—Same—In Impressing Trust on Fund in Insolvent Bank, Plaintiff Not Limited to Actual Cash on Hand. On insolvency of bank, where funds therein were impressed with a trust in plaintiff's favor, plaintiff in impressing such trust was not limited to actual cash on hand.

---

\*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, p. 597, n. 32; p. 617, n. 71, 72; p. 751, n. 78, 79, 80; p. 752, n. 81.

Appeal from the Circuit Court of Cole County.—Hon. Henry J. Westhues, Judge.

AFFIRMED.

*James W. Broaddus* and *McAllister, Humphrey & Pew* for respondent.

*Montgomery, Rucker & Hayes* for appellant.

ARNOLD, J.—This is an action to have established, as preferred, a claim against the defunct Bank of Syracuse which closed its doors on April 7, 1924, the Commissioner of Finance of the State of Missouri taking possession of the business and property thereof and placing the same in the hands of a deputy commissioner, for liquidation.

The facts disclosed are that the Bank of Syracuse was incorporated under the laws of the State of Missouri and doing business at the town of Syracuse, Morgan County, Mo. Plaintiff formerly had been cashier of said bank and at the time of the institution of this suit, and for some years prior thereto, was a resident of Kansas City, Mo. On his removal from Syracuse to Kansas City, or soon thereafter, plaintiff closed his account in the Bank of Syracuse, withdrawing all his deposit therefrom except $25, which he left as evidence of good will; and said account had thus remained inactive for some years prior to the occurrences leading up to this action.

Plaintiff held a note for $5000 executed by one R. T. Carpenter and wife, secured by a first deed of trust on a farm adjacent to the town of Syracuse, and dated April 29, 1922, falling due on April 29, 1923. A short time before the note fell due, plaintiff delivered the note and deed of trust to E. E. Poe, then president in active control of the Bank of Syracuse, with instructions to collect and remit the proceeds thereof to plaintiff at Kansas City. The note was not paid when due and an extension of thirty days was allowed by plaintiff. The note, together with interest, was paid to Poe on May 29, 1923, the total amount being $5,379.17. This amount was not sent to plaintiff but was placed by Poe to plaintiff's credit in the Bank of Syracuse. The note was paid by the maker thereof securing a new loan of $5000 from a company in Sedalia, Mo., and giving his check for $379.17 on the bank of Syracuse, being the amount of the accrued interest.

Plaintiff's testimony was to the effect that he did not know the collection was made, nor that he had been credited therewith on the ledger of the Bank of Syracuse; that he had not authorized anyone to make such deposit, and that no one was authorized to draw against, or charge any item against said account.

It is shown by the record that on January 18, 1924, two checks were drawn by Poe for $1500 each, one payable to C. D. Steele and the other to the Wood Store, signed by Mary E. Nelson. The said checks went through the bank and were paid, but upon the bottom of each was a notation, "Charge to A. S. Thomson." On March 25, 1924, a check for $1020 in favor of the Community Bank, signed by E. E. Poe was drawn. This check also bore a memorandum, "Charge to A. S. Thomson." On March 8, 1924, a check was drawn payable to E. P. Poe for $2400, signed A. S. Thomson by E. E. Poe, and deposited to the credit of Poe; and later on another check was drawn to E. E. Poe for $484.17 signed A. S. Thomson by E. E. Poe, and deposited to Poe's account, thus exhausting the entire balance to the credit of plaintiff. Shortly after the two checks of $1500 each had been charged against plaintiff's account, he was credited with $1500. This credit, together with the $25 inactive balance,

and the $5379.17 paid by Carpenter, equals the total of the items charged against him by Poe, so that the check of $484.17 exhausted the balance to plaintiff's credit.

Plaintiff testified he knew nothing of the transactions above detailed and that none of them was authorized by him. Poe testified that the two checks of $1500 each were to cover overdrafts of two other customers of the bank; that the check for $1020 was to pay an obligation of the Syracuse Bank for which it was responsible to the Community Bank, in whose favor it was drawn; that the $2400 check was used by him (Poe) in meeting pressing obligations of the bank in an attempt to keep it afloat, and that this, together with the last check of $484.17, together with all of Poe's personal estate, were consumed in a futile effort to prevent the bank from failing.

There is some slight evidence of record tending to show that for a short time prior to the bank's failure plaintiff might have known that the money in question was in the bank. Plaintiff testified that Carpenter, to whom he had sold the farm, was claiming there was a defect in the title and for this reason he was unable to get a new loan on it, and this fact, together with Poe's statements, led plaintiff to believe Carpenter was depending upon the Bank of Syracuse to lend him the money with which to pay the note held by plaintiff; that Poe told plaintiff the bank was unable to furnish the money because the grain men were making heavy demands upon the bank for money to handle grain and he could not meet all demands.

Plaintiff testified he learned from an officer of the Pioneer Trust Company of Kansas City that the grain men had paid off their obligations to the Bank of Syracuse. This testimony was given in explanation of a letter written by him to Poe on January 30, 1924, in which the following clause appears: "Since Sister has died I will have to give Myrtle her money. Wish you would arrange to send me the amount of the Carpenter note and interest—my understanding is that you have it. You wrote me that Ellis and the Farmers Elevator had so much wheat on hand and I suppose they have moved it by this time." Plaintiff testified this statement in the letter was made upon the belief that Poe had been waiting for the grain men to pay their obligations to the bank so the bank could furnish Carpenter a loan to enable him to pay the $5000 note to plaintiff. Poe wrote plaintiff later that he would be in Kansas City in a few days and bring him a draft for the amount of the Carpenter loan.

On March 24, 1924, Poe sent plaintiff a check for $5000, stating, in a letter dated February 13, 1924, that he would bring him the interest. Plaintiff testified that this was the first information he had that the Carpenter collection had been made. This is the only evidence on this point in the case. On February 26, 1924, plaintiff wrote the county clerk at Versailles, Morgan County, Mo., asking

if the deed of trust securing the note in question had ever been released and in reply was informed that it had been satisfied of record May 29, 1923.

Upon securing this information, plaintiff wrote Poe again and received the reply that Poe and his wife were going on a vacation and would bring a draft with them. Within a few days thereafter Poe sent plaintiff the check above mentioned. Plaintiff deposited the check in a local bank in Kansas City and when it reached the bank at Syracuse, a draft on a bank in Sedalia was sent plaintiff in payment thereof. The draft on the Sedalia bank was dishonored and the Bank of Syracuse was closed on April 7, 1924. The record shows that on the day following the closing of the bank plaintiff went to Syracuse and was shown the books of the bank and learned that the money had been entered thereon as a deposit. He stated that after finally learning that the money had been collected he had been trying continuously to induce Poe to send it to him.

The evidence shows that at the time the bank of Syracuse failed, the amount of cash in the vaults was $1085.72; that the bank had a balance to its credit in correspondent banks of $3189.92; notes due the bank amounted to $97,976.04, and that it held $100 in liberty bonds and $935 in loans on real estate. These amounts comprised all the assets of the bank at the time it came into the hands of the Commissioner of Finance for liquidation on April 7, 1924.

On July 6, 1924, plaintiff presented his claim to the Commissioner of Finance, asking that the said sum of $5379.17 be allowed as a preferred claim. In due time the amount was allowed by the Commissioner as a general claim and so reported to the circuit clerk of Morgan county. At the same time the Commissioner called attention of the court to the fact that claimant was asking that the same be allowed as a preferred claim; whereupon the claim was filed and docketed in the Morgan county circuit court as a separate cause.

By stipulation of parties, venue was changed to the Cole County circuit court and the cause was there tried to the court without the aid of a jury. A decree and judgment was entered allowing plaintiff's claim in full in the sum of $5379.17, as a preferred claim, and such judgment was entered of record. A motion for a new trial was unavailing and defendants appeal.

Appellants attack the judgment from various angles but in our discussion all the points raised may be considered together. It is defendants' position that plaintiff became a creditor of the bank when he sent his note to Poe for collection and remittance, and that the relation between plaintiff and the bank was that of debtor and creditor; that the assets of the bank were not enhanced when the collection was made, and that the transaction was simply a transfer of credits on the books of the bank; that if there was a trust, it could

not be for more than $1080 which was the amount of cash on hand when the bank failed. In short, the position of defendants is that there was no trust impressed upon the assets of the bank, and that the court erred in so holding.

The solution of the questions presented on appeal, therefore, lies in the determination of the fact as to whether or not a trust was created. The general rule is, and the courts are practically unanimous in accepting it, that the title to paper deposited in a bank for the special purpose of collection does not pass to the bank. [11 A. L. R., p. 1046.]

The case of Bank v. Sanford, Assignee, 62 Mo. App. 394, is directly in point on this proposition. In that case a collection was made and thereafter there was an attempt to remit by draft on another bank which draft was dishonored. The holding of the court was to the effect that if a bank collects commercial paper left with it for collection, and subsequently, without paying over the proceeds to the owner thereof, makes an assignment for the benefit of a creditor, the assigned effects are impressed with a trust in favor of the depositor which entitled him, in equity, to a priority over general creditors; and this is true, although such proceeds may not have reached the assignee in the original form, or in a substituted or converted form.

In Thompson v. Bank, 8 Atl. Rep. 97, it was said: "It would hardly be safe to say that an agent could make himself a debtor, as distinguished from agent, by a confusion of the moneys or goods of his principal, and by then giving his principal credit for their value, or the amount collected."

This court held in the case of Insurance Company v. Kimble, Assignee, 66 Mo. App. 370 (Syl.): "Where a bank receives a note solely for collection and transmission to the owner, the relation of trustee and *cestui que trust* obtains between the parties, and, if on collection it fails to transmit and the money is thus added to the assets of the bank, the owner can follow and reclaim the fund whether existing separate or intermingled with the moneys of the bank even in the hands of an assignee for creditors." [See, also, Horigan Realty Co. v. Flynn, 213 Mo. App. 591, 253 S. W. 403; Schulz v. Bank of Harrisonville, 246 S. W. 614.] In the case of Horigan Realty Company, this court held that where a trustee commingled trust funds and property with his own, and made a transfer thereof to his assignee, or representative of the trust, the *cestui que trust* was entitled to follow and recover the trust property as found, where it is shown that the same, or its substitute, formed an actual part of the property going into the hands of the assignee or representative of the trust, so that the amount received by them as the estate of the trustee was greater than it would have been

without the inclusion therein of the trust property. It is also true that where a trustee has used up, or expended, trust property in his business, by reason of such use, the *cestui que trust* may recover the same from the estate of the trustee in the hands of his assignee or representative because the estate has been presumptively benefited thereby.

This court also held in the Schulz case that only where the money is voluntarily deposited does the title pass to the bank, but in the case of a special deposit, the depository bank merely takes custody of the money without authority to use it. In the case at bar, the defendant bank was instructed to make collection and remit the proceeds. Under the above rulings, it must be held that the fund collected was impressed with a trust.

Defendants contend that the collection did not augment the assets of the bank. We think this position untenable. The testimony shows that the principal sum, $5000, was borrowed from another institution and was either placed by Carpenter to his credit, or the draft received by him from the lender thereof, assigned to the defendant bank. In either case, it is clear that the said deposit augmented the assets of the bank to that amount. The evidence shows that the interest, $379.17, was represented by an individual check drawn by Carpenter upon his individual account in defendant bank, and that it was charged against his account and credited to plaintiff's account. We accept as true the theory of plaintiff as to this transaction to the effect that the $379.17 came from Carpenter's open checking account, subject to exhaustion at any time, and that it was turned over to the bank and therefore was out of the reach of Carpenter; that it passed to the permanent assets of the bank, where it remained until the bank closed. This item, therefore, was impressed with a trust as was the item of $5000. The fund being thus impressed with a trust, it was incumbent upon plaintiff to follow the trust fund into the hands of the Commissioner of Finance and there claim it. The testimony shows that plaintiff successfully met this requirement, having shown by witness Poe, the ledger account, and by checks issued by Poe, the identical destination of the fund into the assets of the bank, now in the hands of the Commissioner of Finance.

There is one other element necessary to establish plaintiff's claim as preferred, to-wit, whether the assets of the bank are shown to have been sufficient to meet this as a preferred claim. Defendants insist that only the cash on hand ($1085.72) shall be held to respond in payment in case the amount of plaintiff's claim is held to be preferred. This position cannot be successfully maintained. The assets of the bank, as shown by the evidence, are as follows:

| Cash in vault | $1085.72 |
| Loans on real estate | 935.00 |
| Liberty bonds | 100.00 |
| Notes due the bank | 97,976.04 |
| | |
| Total | $100,096.76 |

We find no rule to the effect that a trust may be impressed only against the actual cash item. It will not be contended, we take it, that the bank's assets above enumerated, are not, in effect, cash items, and under the rulings, entitled to be impressed with the trust. This ruling is against, and covers all of defendants' points urged against the judgment rendered in the court below. We hold, therefore, that the judgment should be affirmed, and it is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.